UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELVIS S., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. CV 18-5832-SP <br><br> MEMORANDUM OPINION AND ORDER |

# I.

# **INTRODUCTION**

On July 3, 2008, plaintiff Elvis S. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the

Administrative Law Judge ("ALJ") erred at step three; and (2) whether the ALJ properly considered the opinion of the State Agency physician. Plaintiff's Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 6-15; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-7.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the Administrative Law Judge ("ALJ"), the court concludes that, as detailed herein, plaintiff's arguments are moot with respect to the period for which plaintiff was found disabled, and plaintiff has not demonstrated any error for the period after the ALJ found plaintiff's disability ended. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 24 years old on the alleged disability onset date, completed school through the ninth grade and reported earning his GED. AR at 70, 203, 460. Plaintiff has past relevant work as a warehouse worker, manufacturing helper, and hand packager. *Id*. at 58, 61.

On September 19, 2014, plaintiff filed applications for a period of disability, DIB, and SSI, alleging an onset date of July 1, 2014 due to mental illness, schizophrenia, and anxiety attacks. *Id*. at 70, 82. The Commissioner denied plaintiff's applications initially, after which he filed a request for a hearing. *Id*. at 96-104.

On April 18, 2017, plaintiff, represented by counsel, appeared and testified at a hearing. *Id*. at 44-69. The ALJ also heard testimony from Abbe May, a vocational expert. *Id*. at 57-58, 61-68. On June 19, 2017, the ALJ issued a partially favorable decision, finding plaintiff disabled from July 1, 2014 through November 30, 2015, but also determining the disability ended December 1, 2015.

*Id*. at 24-38.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since July 1, 2014, the disability onset date. *Id*. at 28.

At step two, the ALJ found, plaintiff suffered from the following impairments: psychotic disorder, not otherwise specified; mood disorder, rule out schizoaffective disorder; schizophrenia; a history of polysubstance abuse of methamphetamine and marijuana with continued use of marijuana through approximately January 2015; and obesity. *Id*. at 28, 33.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. at 28-29, 33.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined from July 1, 2014 though November 30, 2015, he had the RFC to perform a full range of work at all exertional levels, with the limitations that plaintiff: could not climb ladders, ropes, or scaffolds; could not drive; needed to avoid concentrated exposure to extreme heat, unprotected heights, and hazardous or moving machinery; was not capable of interaction with the public; could have occasional non-team interaction with coworkers; could have occasional interaction with supervisors; was able to understand, remember, and carry out simple instructions; and was unable to perform work requiring directing others, abstract

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

thought, or planning. *Id*. at 29. The ALJ also found plaintiff would have been absent two days per week; would have been off task 20 percent of the day; and would have engaged in inappropriate behavior one-third of the day with coworkers and supervisors. *Id*.

The ALJ determined that beginning from December 1, 2015, plaintiff showed medical improvement and fewer limitations. *See id*. at 35. Plaintiff's RFC remained the same except: plaintiff would likely be off task only up to ten percent of the day, meaning six minutes cumulative per hour and not all at once; no longer would be absent two days per week; and no longer would engage in inappropriate behavior one-third of the day with coworkers and supervisors. *Id*.

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as a warehouse worker, manufacturing helper, and hand packager during both periods. *Id*. at 31-32, 37.

At step five, for the period from July 1, 2014 though November 30, 2015, the ALJ found that given plaintiff's age, education, work experience, and RFC, there were no jobs existing in significant numbers in the national economy that plaintiff could have performed. *Id*. at 32. Plaintiff was therefore under a disability as defined by the Social Security Act for that period. *Id*. at 33.

Beginning December 1, 2015, however, the ALJ found that given plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including night cleaner, laundry worker, and groundskeeper. *Id*. at 37-38. Consequently, the ALJ concluded plaintiff's disability ended December 1, 2015. *Id.* at 38.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id*. at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

# III.
# **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.

# DISCUSSION

## A. Whether the ALJ Erred at Step Three Is Moot

Plaintiff argues the ALJ erred at step three. P. Mem. at 6-11. Plaintiff contends the ALJ considered the incorrect Listing, Listing 12.04 rather than Listing 12.03, and improperly found he did not meet the paragraph C criteria. *Id.* Plaintiff acknowledges the ALJ's alleged error in considering Listing 12.04 was immaterial to the outcome because the paragraph C criteria are identical for both Listings. *See id.* at 9. Thus, the focus of plaintiff's argument is that the ALJ erred with respect to the paragraph C criteria.

Plaintiff's argument is moot. Plaintiff's argument that the ALJ erred at step three effectively goes only to the period from July 1, 2014 through November 30, 2015; however, the ALJ in fact found plaintiff was disabled for that period. *See id.* at 9-10, AR at 33. Although plaintiff does not expressly limit his argument to this period, he only cites medical evidence dating up to November 2015. *See* P. Mem. at 10. Plaintiff further indicates his argument is limited to the period between July 1, 2014 and November 30, 2015 in that his argument that the ALJ, in error, considered Listing 12.04 rather than Listing 12.03 is incompatible with the ALJ's findings for the period beginning December 1, 2015. While the ALJ found plaintiff did not satisfy the paragraph C criteria for Listing 12.04 for the first period, for the period beginning December 1, 2015 the ALJ found plaintiff did not meet or equal Listing 12.03 or 12.04. *Id.* at 29, 33-34. Therefore, plaintiff's argument plainly applies only to the period from July 1, 2014 through November 30, 2015, and any error at step three for that period was inconsequential. Plaintiff already obtained the relief sought.

To the extent plaintiff is arguing the ALJ erred at step three with respect to her analysis of the period beginning December 1, 2015, plaintiff cites no evidence

to support his argument he satisfied the paragraph C criteria. Paragraph C states:

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (*see* 12.00G2b); *and*
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (*see* 12.00G2c).

Listing 12.03. Not only has plaintiff failed to point the court to any evidence to support a finding plaintiff met these criteria starting December 1, 2015, the evidence is to the contrary. On December 22, 2016, plaintiff reported to his physician that his medications were helpful and that he last experienced a psychotic symptom a year ago. AR at 708; *but see id*. at 695 (plaintiff stated he experienced an auditory hallucination when he skipped his medication).

Accordingly, plaintiff's argument is moot because the ALJ found him to be disabled from July 1, 2014 through November 30, 2015. Plaintiff does not even attempt to argue there was evidence he met the paragraph C criteria after that period.

**B.      Whether the ALJ Properly Considered the Opinion of the State Agency Physician Is Moot**

Plaintiff argues the ALJ failed to properly consider the opinion of Dr. Aroon Suansilppongse, a State Agency physician. P. Mem. at 11-15. Specifically, plaintiff contends the ALJ failed to provide legally sufficient reasons for rejecting

7

Dr. Suansilppongse's opinion that plaintiff should be limited to simple one- and two-step tasks. *Id*.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b).[2] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (*citing Lester*, 81 F.3d at 830-31). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* (quoting *Lester*, 81 F.3d at 830-31). The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *Lester*, 81 F.3d at 831.

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

8

1. **The Medical Opinions**

Dr. Thaworn Rathana-Nakintara, a psychiatrist, examined plaintiff on January 31, 2015. AR at 459-63. Dr. Rathana-Nakintara also reviewed some of plaintiff's medical records. *Id.* at 459. Based on his examination and review, Dr. Rathana-Nakintara diagnosed plaintiff with a non-severe psychotic disorder, not otherwise specified, and opined plaintiff had no limitations. *See id.* at 462.

Dr. Aroon Suansilppongse, a State Agency physician, reviewed plaintiff's medical records through March 2015. *See id.* at 74-75. Dr. Suansilppongse diagnosed plaintiff with a mood disorder, not otherwise specified, ruling out schizoaffective disorder and polysubstance abuse by history. *See id.* at 79. Dr. Suansilppongse opined plaintiff could perform simple one-to-two-step tasks with infrequent interactions with coworkers and the public. *See id.*

2. **The ALJ's Findings**

In reaching her RFC determination for the period from July 1, 2014 through November 30, 2015, the ALJ afforded little weight to both Dr. Rathana-Nakintara's and Dr. Suansilppongse's opinions. *Id.* at 31. The ALJ found both opinions overestimated plaintiff's abilities and were inconsistent with the evidence in the record. *Id.* The ALJ also found the physicians did not adequately consider and accommodate plaintiff's subjective statements. *Id.*

Plaintiff ignores the fact the ALJ opined greater limitations, as a whole, than Dr. Suansilppongse did, and focuses on only one aspect of Dr. Suansilppongse's opinion, the limitation of plaintiff to one-to-two-step tasks. Similar to plaintiff's first argument, this argument is moot. The ALJ found plaintiff to be disabled from July 1, 2014 through November 30, 2015. Thus, whether the ALJ should have given more weight to Dr. Suansilppongse's opinion limiting plaintiff to one-to-two-step work is inconsequential.

To the extent plaintiff argues the ALJ failed to properly consider Dr.

Suansilppongse's opinion for the period beginning December 1, 2015, plaintiff's argument appears to be based on a misreading of both the ALJ's decision and Dr. Suansilppongse's opinion. In reaching her RFC determination for the period beginning December 1, 2015, the ALJ noted there was no opinion evidence for the period. *Id*. at 37. Instead, the ALJ based her decision on plaintiff's testimony and the medical records. *See id*. at 35-37. While plaintiff asserts Dr. Suansilppongse provided an opinion on April 6, 2016, the record plainly reflects the opinion was dated April 6, 2015 and Dr. Suansilppongse had only reviewed plaintiff's medical records as of March 2015. *See* P. Mem. at 11, AR at 75, 79. Thus, the ALJ correctly noted there were no medical opinions concerning petitioner's limitations beginning from December 1, 2015. Given Dr. Suansilppongse's limited review and plaintiff's improvements after December 1, 2015, Dr. Suansilppongse's opinion was not sufficiently probative.

In short, plaintiff's second argument – whether the ALJ properly considered Dr. Suansilppongse's opinion – is moot. Even had the ALJ failed to provide sufficient reasons for discounting one part of Dr. Suansilppongse's opinion, the ALJ already found him to be disabled from July 1, 2014 through November 30, 2015, the period covered by Dr. Suansilppongse's opinion. Dr. Suansilppongse's opinion was not relevant to the period beginning December 2015.

V.

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: March 17, 2020

SHERI PYM
United States Magistrate Judge